The next case for argument is 16-3063, District of Minnesota. Jennifer Heglund et al. v. City of Grand Rapids et al. Ms. Wolpert Good morning, Your Honors. May it please the Court. My name is Robin Wolpert and I represent the appellant, Jennifer Heglund, in this matter. We respectfully ask the Court to reverse the District Court's decision and remand this case for trial. The District Court erred in three respects. First of all, the District Court erred in declining to hold that the first amended complaint related back to the original complaint. The rule of law that we're asking the Court to articulate here is that the word mistake includes lack of knowledge of the name of the individual defendant. Second, the District Court erred in declining to permit relation back under the doctrine of equitable tolling. We ask the Court to hold that where the operation of state law, the Minnesota Government Data Practices Act, where that operation of state law prevents a plaintiff from learning the identity of a defendant, that equitable tolling is warranted. And finally, the District Court erred in granting summary judgment on the grounds of qualified immunity. The District Court erred in placing the burden of proof for this affirmative defense on the plaintiff, and then improperly evaluated the state of the evidence before the Court on the record. With respect to the issue of summary judgment, to the extent that the Court was actually issuing a summary judgment decision, the evidence in the record in favor of the appellant tips the scales and demonstrates that there was an improper purpose for the accesses of the data under the DVS system in Minnesota. What's your best authority for a mistake being able to reach an anonymous pleading? My best authority is Krupski itself. So Krupski, as well as the plain language of Rule 15c, focus on notice. And that's what Krupski was all about. If you take even a look at some of the key passages of Krupski, what the Court is saying is the question is not whether, for example, Krupski should have known the identity of the party, but what the defendant knew. So what the defendant knew is critical. So it's a shift in perspective away from mistake and toward notice. That's what Krupski is correcting. Because what the district court did below was focus on that narrow word, what is a mistake, and place the burden and focus on what the plaintiff knew, what the plaintiff was doing, and Krupski changed that perspective and said, no, let's go back to the plain language of the rule. The rule is saying, go ahead. Suppose you're right about that. Did Sheriff receive notice of the action? And should Sheriff have known that the action would have been brought against him? We don't really have any findings on that from the district court. The defendants below never contested that, and the evidence in the record indicates that he had notice. First of all, we provided a notice letter to the entity defendants, and the notice letter said that it's our understanding that the names of the individual defendants will not be produced under the Minnesota Government Data Practices Act before commencing litigation. So that's in the notice that went out even before litigation. In the complaint, in paragraph 421, the complaint said the Minnesota Government Data Practices Act is the basis for the individual defendants not being named right now. In the complaint, we had exhibits, exhibits C and D, which articulated the Department of Public Safety's position regarding the fact that the individual defendants were being classified as non-public data. And we also have other pieces in the record that I direct the court's attention to, which is the Rule 26F report, where all the parties understood that there would be a subpoena getting those names, that there was a DPS and plaintiff stipulation in the record where DPS said it's our position that we will not release this information, it's non-public, unless the court issues an order. And finally, with respect to the order that the district court issued granting the plaintiff's motion to amend the complaint, the court found no bad faith, no undue delay, or dilatory motive in amending the complaint, and no prejudice to the defendant. When was it discovered that Sheriff was the proper party to name? On December 1, 2014, right after the initial disclosures were due, and a little later in January when the DPS provided the names of the individual defendants for the entire audit report. So that's when the plaintiffs first found out. And this is really due... Can you go back to how Sheriff had notice at the earlier time? Most of the things you described were explaining why you couldn't give, why you couldn't identify... But they also provided notice, Your Honor, in the sense that we gave notice letters and said, we don't know the names of the individual defendants, but we're serving you, entity. The defendants had never said, we never had notice, we're prejudiced, we can't defend this case, we had no idea we were a target of litigation. We being who? The defendants have never argued that. Which defendants? Mr. Sheriff, as well as other defendants that have been subsequently weeded away through the course of this litigation. I didn't understand why you were speaking in the plural, I thought we were talking about Sheriff. Right. But it's never been the contention of respondents here that Mr. Sheriff did not have notice, and when he was deposed, he was asked those kinds of questions, and he found out that he was a target. It turns out from, I think, his wife, who worked elsewhere in the city. So he knew that he was a target. But the other thing is the audit report itself identifies the computer that was being used by the person doing the accesses. It identifies the Grand Rapids Police Department as the source of where the lookups are occurring. And so when you get a notice letter, we all expect for corporations, any kind of government entity, that people get together with their lawyer and say what happened. And there's no allegations that Mr. Sheriff was not included in that and did not know. So given the fact that we have that issue off the table, that he had noticed, that he's been able to defend this case, the critical question is whether he gets a windfall through a narrow construction of the term mistake. What have other circuits been doing with this question? I think this is our first case, but I don't think it's the first time it's been on appeal. Right. So the majority rule in several of the circuits is that the term mistake should be construed narrowly to preclude instances where we have a John Doe situation. And at the time of briefing, we articulated what the current rule of law was in these various circuits. In preparation for this argument, I will look to see whether the law was evolving. Our brief indicates that in the second circuit, the law is evolving, and that many district courts are creating exceptions, not necessarily in a John Doe situation, but in instances where the defendant's identity is peculiarly in the knowledge or realm of the defendants, and that perhaps there might be dilatory tactics on behalf of the defendants to preclude the plaintiff's understanding of the identity of the defendants. Were there any barriers in this case to the discovery of the identity of the defendant? Were there barriers? Yes, there were. The operation of the Minnesota Government Data Practices Act precluded the plaintiff, the appellant, from obtaining the information regarding the identities of the individual defendants, and that is replete throughout the record from the time the notice letters went out, through the complaint, through the Rule 26F report, and on through discovery. So, in fact, when the district court issued its order on our motion to amend the complaint, the district court recognized that there was no dilatory mode of bad faith or undue prejudice to the defendant, and the defendant has never made that argument. When you have a John Doe defendant like this, and you reach this obstacle of the state statute that doesn't permit release of these particular names, correct? Right. What avenue do you have through the state law to find that? Well, one option would be to file a Minnesota Government Data Practices Act, but as you can see from the DPS stipulation with the plaintiff in the record below before you, the DPS took the position that we will not release these names, this is non-public data, and we will not do it absent a court order telling us that the needs of the plaintiff outweigh the privacy interests of the individual defendant who is protected by the Minnesota Government Data Practices Act. So that would have been something that would be futile. So that, in the end, is where we stand with this litigation, is that operation of state law precluded the plaintiff from getting information. But under the straight-up relation back argument and the structure of analysis, it doesn't matter what the plaintiff knew or didn't know. It doesn't matter how fast the plaintiff moved or any diligence. Krupski foreclosed that factor and said the rule doesn't mention it, and it's not there. So, again, Krupski shifted, again, the focus back to notice, and that's where I think the words of the rule begin, as well as the language of Krupski. The rules are supposed to be liberally construed in favor of resolving cases on the merits, permitting complaints to be amended, and so forth. But I did want to go back to Judge Smith's question, which was, what's the status of this rule in the circuits now? So besides the Second Circuit, where we've seen courts carving out exceptions under the relation back doctrine to permit parties to have their Second or First Amendment complaints relate back, we also have movement in the Fourth Circuit, the Fifth Circuit, and the Seventh Circuit. In the Fifth Circuit, there have been some district court decisions questioning the majority rule, but still continuing to follow the Fifth Circuit's directive because, of course, the rules that go along with the judicial hierarchy. In the Fourth Circuit, we saw the same thing. We saw some courts that were carving out exceptions. And in the Seventh Circuit, I have a case in front of me that I thought I could let you know about. This is the Seventh Circuit, and in an unpublished decision called Clare v. Cook County from 2017, this court, the district court, was quoting the Seventh Circuit, which issued a decision after Krupsky, not addressing the issue before us precisely, but saying that Krupsky had changed what we and other courts had understood to be the proper standard for deciding whether an amended complaint relates back to the date of the filing of the original complaint. We had thought the focus should be on what the plaintiff knew or should have known. The only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one is first, whether the defendant, who is thought to be added by amendment, knew or should have known that the plaintiff, had it not been for a mistake, would have been sued, and second, whether even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself. So this court is recognizing a split in the courts in the District of Illinois regarding this question. What are you reading from there? I am reading from Clare v. Cook County, Illinois. Is that a case that you cited in a follow-up letter? No, this is a 2017 decision, Your Honor. You might send a letter then if you think it's an important authority, rather than just reading it there. So we can be sure to find it. Thank you, Your Honor. I had a question about your summary judgment argument. You said that the court improperly shifted the burden of proof on an affirmative defense. What affirmative defense do you mean? Qualified immunity. This court has repeatedly held that qualified immunity is an affirmative defense for which the plaintiff only bears the burden of proof regarding what is clearly established law, and the remaining burden under saucere is on the shoulders of the defendant. You don't think the plaintiff has the burden to show there's a genuine issue of fact about whether there's a constitutional violation or a statutory violation? That would be the summary judgment standard, Your Honor. Then the plaintiff would have that burden. Yeah, okay. Do you think you've met that? I will save it for rebuttal, and thank you very much. Thank you, Ms. Wolpert. Ms. Tindall? Thank you, Your Honors. May it please the court, my name is Susan Tindall, and I am here on behalf of the city of Grand Rapids and Frank Scherff. We are asking that this court affirm the district court's decision dismissing this matter. I would like to first address the qualified immunity question that was just asked by the court regarding the standard here. In qualified immunity, the district court found that there was not a material issue of fact that Scherff accessed Ms. Hagelin's driver's license information without a permissible purpose. It's clear from many decisions in this court that under qualified immunity, plaintiff must show a genuine issue of fact to overcome that qualified immunity. And that's been several cases, including Bishop, the Eighth Circuit decision in 2013. Additionally- Why isn't there a genuine issue here about whether Scherff accessed this record for non-law enforcement purpose? There's nothing in the record to overcome what the court has determined in McDonough that absence clear evidence to the contrary, courts presume public officials have properly discharged their official duties. And that was this court's finding in McDonough. Hagelin is essentially asking that this court determine- I guess the ex-spouse or ex-significant other and law enforcement in the community that may have led to a net of people who would be interested in this information. There's nothing in the record that definitively suggests that, including that Frank Scherff's testimony, he repeatedly says, I do not remember why I accessed her information. In fact, when you look at the testimony that has been cited by the appellant in this- Why doesn't that help the plaintiff? Because- He says, I can't remember. He doesn't have an answer for why he accessed it. Because, Your Honor, it's asking for a subjective approach. And that is contrary to United States Supreme Court- If you had legitimate law enforcement reason, that could have been stated. And then I think your initial point would have been well made. If a statement had been made, it was access to an investigation of X or Y. What the plaintiff is suggesting is that if a law enforcement officer doesn't know, over six years later, a reason for the access,  where the United States Supreme Court in Meritage has explained, in explicitly interpreting the DPPA, that the courts should look at this from an objective standpoint. Not that seductive standpoint that he doesn't remember, but the totality of the circumstances here. That court directed that the court of appeals and the district court must determine whether the respondent's letters viewed objectively had the predominant purpose of solicitation, which is another exception under the Driver's Privacy Protection Act. Also referred to what a reasonable observer could discern from the facts of this case. So the Supreme Court has demonstrated that the court should approach and analyze the permissible purposes of the DPPA objectively from what that reasonable observer could discern from the facts. And when you look at the facts and apply them from that reasonable objective perspective here, we have an officer who repeatedly testified he doesn't remember why he accessed her information over six years ago. Access was done while he was on duty at 11.32 a.m. There's no pattern of improper accesses here. There's either no pattern of previous accesses of Ms. Hagelin barred by the statute of limitation or other accesses here. There's no other accesses by Frank Scherff at the same time as other law enforcement agencies. There's no event that would have triggered the accesses in this case. Well, you also have testimony from the plaintiff that there's nothing about what she did that would have caused a need for a law enforcement access, right? Am I remembering the testimony correctly? But that is her belief. Again, Your Honor, it goes back to this. Because Frank Scherff cannot remember the reason for the access, that subjective approach, and that is the wrong direction under the United States Supreme Court in Merichich, that it should be from an objective viewer based on the fact. And there is not a genuine dispute in the record that the access was for an improper purpose here. In fact, Frank Scherff has never even met Ms. Hagelin. He doesn't recall ever discussing Ms. Hagelin with anyone else outside this litigation. He didn't know that Ms. Hagelin's ex-husband was connected to this litigation until during his deposition. The fact that he came up with a hypothetical but then indicated he doesn't know why he accessed this information is not enough. Under the court's directions in McDonough, Malik, and Tichich, there's not enough to create that genuine issue of fact that the access was for an improper purpose. I would also like to address the relation back issue before the court. And I respectfully disagree that mistake includes lack of knowledge under the Supreme Court's direction. Both under the plain language of 15C, as well as the court's direction in Krupski, it's clear that that doesn't encompass lack of knowledge. What do you do with the fact that when the court in Krupski was defining mistake, it cited Webster's Dictionary, which said a wrong action or statement proceeding from inadequate knowledge? That's tied to the wrong action. If you look at the sentence in a whole, it says wrong action or statement proceeding from faulty judgment, inadequate knowledge. Here, there's no wrong action. When you read it correctly, that is a whole there. For example, if Ms. Why isn't naming Doe rather than Scherff a wrong action? Proceeding from inadequate knowledge. It would be a wrong action if, for example, Ms. Hagelin believed that John Doe improperly accessed her information. But that's not the case. She just completely didn't know that. So the piece of that is tied to the wrongful action of that. And so there is no direction from the Supreme Court that mistake includes inadequate knowledge. And Your Honor, there was some confusion about prejudice. And there's no indication that the rule or the Supreme Court's ruling discusses prejudice to defendants. I think she's improperly talking about equitable tolling or something of that matter. So based on that plain language and the Supreme Court's ruling, that is not an essential element to look at here. The statute of limitation issue is separate from the standard regarding a motion to amend and whether there is prejudice to the defendant in this case. So we would ask that this court look at the plain language of the statute, the full language from the Webster's Dictionary and the direction from the Supreme Court, as well as this court's decision in Folk. It was a 2001 case where the court held an amending complaint that seeks to identify previously unknown police officers does not relate back to the original complaint. The Supreme Court has not overruled that decision. And the district court correctly applied that Supreme Court decision in this case. What about that obstacle of the state law? We've got a plaintiff who is trying to seek an identity of a John Doe defendant and is expressly prohibited from doing so until the litigation gets to a point where you can turn that over. Well, I respectfully disagree that Ms. Hagelin was effectively prevented from that information. She certainly had avenues to get that information through a subpoena earlier in the litigation to the state to get the names of the individual because it is the state that holds the names of these individuals. The city of Grand Rapids doesn't have a list of the officers that access certain information. Is the 600 number the number of potential defendants? Is that where the 600 John Does come from? Is that the number of officers or officials who would have had access to the database? That was who was originally named in this case. Several of those entities were dismissed based on motions to dismiss on the statute of limitations or there were settlements in this case. They don't relate to the city of Grand Rapids. We are talking about one date of access at 11.32 a.m. by Frank Scherff in this case. So those other entities have been dismissed. Hopefully I answered the court's question regarding that. I guess what I'm fishing for is why would Sheriff Scherff be on notice that he could be John Doe? There isn't anything in the record that he was on notice that he was one of those John Does. What opposing counsel pointed out to was the deposition testimony of Frank Scherff that he had heard about the litigation. Well, that was in May of 2015, long after that statute of limitations had run. There's nothing in the record pointing to knowledge by Frank Scherff. It's undisputed that it is the state that holds the information regarding the names of the individual and that Ms. Hagelin had an avenue to do that. She could have subpoenaed it during this litigation earlier, not after the statute of limitations. She could have also done a Data Practices Act request directly to the state and separate from this action. And if she didn't obtain that information, she had avenues to pursue in a state action to get that information. She had two avenues that she didn't pursue. She didn't subpoena that information until the statute of limitations had run. And so the district court was correct in determining that Relation Back does not apply in this case. Was the complaint served on the police department? We actually accepted service on behalf of the police department. So Grand Rapids Police Department was served. Correct. And then the complaint said, did the complaint say that someone from Grand Rapids Police Department had accessed the name? Yes, it did, Your Honor. And that was a John Doe. Correct. That was a John Doe. So the issue of whether Frank Scherf knew that... Why was that not enough to give Scherf notice? There's nothing in the record indicating that Frank Scherf had noticed. As the courts are well aware, hundreds of John Does have been dismissed early in this litigation without having been named. And as clear from the record, the state holds this data. The city of Grand Rapids and Ms. Hagelin have to go to the state to obtain that information of who that individual was. When we were asked for that information during discovery, we promptly provided that information. There's nothing in the record previously about that. However, the court doesn't need to reach that knowledge because based on the plain language of the statute and the Supreme Court's direction, inadequate knowledge is not a part of mistake. And so that knowledge piece is not critical. But regardless, it's not in the record. Unless the court has additional questions, we ask that the court affirm dismissal of this case. Thank you, Ms. Tindall. Thank you. Ms. Wolpert. Thank you. I wanted to pick up where I left off on the issue of qualified immunity and summary judgment. Because the burden of proof for the qualified immunity defense is on the defendants, saying I don't know or I don't recall is not enough for your affirmative defense. A defendant does not get to benefit from their lack of memory and get an affirmative defense. And you certainly don't have any basis to assume that there is a legitimate reason. I think McDonough closed that door when it said, in light of the legislative auditor's report indicating that 50% of law enforcement are engaged in the misuse of the database, this court rejected that notion that they are entitled to the inference that they were acting properly. Moreover, with respect to qualified immunity, if Scherff doesn't know, then what's the evidence on qualified immunity that tips it in favor of the plaintiff? Well, Scherff himself testified that he had no basis or reason to look at historic photos. And that's what he did here. He looked at four historic photos first, and then he accessed the demographic data, which means he looked at her picture as well as information about what kind of motor vehicles she had that were registered. He said he didn't have a reason to look at historic photos, and that's precisely what he did here. In addition, the plaintiff provided testimony that there was no legitimate basis for a lookup. So she has evidence. That evidence counts, and that evidence tips the scales in favor of plaintiff, not only for purposes of qualified immunity, but certainly for purposes of summary judgment. This is a case where a defendant says, I don't know. And in the context of summary judgment, it's critical that the plaintiff provide affirmative evidence, and she did. She testified, I wasn't arrested. I didn't call for service. I'm not a predatory offender that has to be registered. I didn't get a gun permit. She testified to all of those reasons that someone might have to take a look at her in the DVS database. So I want to... Your time's expired. I'm sorry. My time has expired. Thank you very much for your time this morning, and we ask that the district court order be reversed. Thank you. The court thanks both counsel for your presence and the argument you've provided the court. We'll take the case under advisement, render decision in due course. Thank you.